Corrected

No. 21-3251

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

UNITED STATES OF AMERICA
Appellant

v.

DONTE DOWDELL

Appeal from an Order Suppressing Evidence in a Criminal Case in the United States District Court for the District of New Jersey (No. 21-cr-363). Sat Below: Hon. John Michael Vazquez, U.S.D.J.

———————————

BRIEF FOR APPELLANT

———————————

Philip R. Sellinger
United States Attorney
Attorney for Appellant
970 Broad Street
Newark, New Jersey 07102-2535
(973) 645-2700

On the Brief:

Mark E. Coyne
Assistant U.S. Attorney
Chief, Appeals Division
(973) 297-2002

# TABLE OF CONTENTS

<u>**Page**</u>

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES .................................................................. ii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUE ............................................................. 1

STATEMENT OF RELATED CASES AND PROCEEDINGS ..................... 2

STATEMENT OF FACTS AND CASE ................................................... 2

SUMMARY OF ARGUMENT ........................................................... 10

ARGUMENT ............................................................................... 11

I.  There Was No Fourth Amendment Violation Here, for the Very Reason
    the District Court Identified ................................................... 11

II. The District Court Erred by Granting the Suppression Motion on Waiver
    Grounds Despite Finding No Fourth Amendment Violation ................... 16

    A. There Was No Waiver or Forfeiture, Just at Most a Mistaken Legal
       Concession That Could Not Bind the District Court .......................... 17

    B. Given the Interests at Stake, the District Court Should Have Excused
       the Failure to Advocate the Correct Legal Standard ........................... 20

CONCLUSION ............................................................................. 23

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Anderson v. City of Bessemer*,
   470 U.S. 564 (1985) ........................................................................ 14

*Arizona v. Evans*,
   514 U.S. 1 (1995) ............................................................................ 21

*Arizona v. Johnson*,
   555 U.S. 323 (2009) ........................................................... 12, 14, 17

*Barna v. Board of School Directors of Panther Valley School District*,
   877 F.3d 136 ................................................................................... 17

*Byrd v. United States*,
   138 S. Ct. 1518 (2018) .................................................................... 13

*Davis v. United States*,
   564 U.S. 229 (2011) ............................................................ 16, 20, 21

*Florida v. Jardines*,
   569 U.S. 1 (2013) .............................................................................. 5

*Gockley v. Myers*,
   450 F.2d 232 (3d Cir. 1971) ........................................................... 20

*Heien v. North Carolina*,
   574 U.S. 54 (2014) .......................................................................... 21

*Kamen v. Kemper Financial Services, Inc.*,
   500 U.S. 90 (1991) .......................................................................... 19

*Kars 4 Kids Inc. v. America Can!*,
   8 F.4th 209 (3d Cir. 2021) .............................................................. 16

*Koon v. United States*,
   518 U.S. 81 (1996) ...................................................................... 20, 21

*Marbury v. Madison*,
   5 U.S. (1 Cranch) 137 (1803) ......................................................... 19

*Maryland v. Wilson*,
   519 U.S. 408 (1997) ................................................................. *passim*

*McHam v. State*,
  746 S.E.2d 41 (S.C. 2013) ........................................................ 22

*Michigan v. Long*,
  463 U.S. 1032 (1983) ........................................................ 12, 17

*Ohio v. Robinette*,
  519 U.S. 33 (1996) ................................................................. 15

*Ornelas v. United States*,
  517 U.S. 690 (1996) ............................................................... 11

*Pennsylvania v. Mimms*,
  434 U.S. 106 (1977) ............................................ 8, 12, 15, 17, 18

*People v. David L.*,
  436 N.E.2d 1324 (N.Y. 1982) ............................................... 13

*Rodriguez v. United States*,
  575 U.S. 348 (2015) ........................................................ 14, 18

*State v. Mai*,
  993 A.2d 1216 (N.J. 2010) ...................................... 6, 13, 14, 15

*Terry v. Ohio*,
  392 U.S. 1 (1968) ................................................................... 5

*United States v. Abreu*,
  32 4th 271 (3d Cir. 2022) ....................................................... 17

*United States v. Baker*,
  221 F.3d 338 (3d Cir. 2000) ................................................... 13

*United States v. Bonner*,
  363 F.3d 213 (3d Cir. 2004) ................................................... 12

*United States v. Bradley*,
  959 F.3d 551 (3d Cir. 2020) ................................................... 17

*United States v. Brown*,
  334 F.3d 1161 (D.C. Cir. 2004) ............................................. 12

*United States v. Campbell*,
  26 F.4th 860 (11th Cir. 2022) ................................................ 21

*United States v. Castillo,*
    896 F.3d 141 (2nd Cir. 2018)..................................................... 19

*United States v. Crandall,*
    554 F.3d 79 (3d Cir. 2009) ...................................................... 16

*United States v. Davis,*
    183 F.3d 231 (3d Cir. 1999)...................................................... 20

*United States v. Engler,*
    806 F.2d 425 (3d Cir. 1986)...................................................... 19

*United States v. Harrison,*
    689 F.3d 301 (3d Cir. 2012)...................................................... 11

*United States v. Hurtt,*
    31 F.4th 152 (3d Cir. 2022) ...................................................... 14

*United States v. Katzin,*
    769 F.3d 163 (3d Cir. 2014)...................................................... 16

*United States v. Leon,*
    468 U.S. 897 (1984) ................................................................ 20

*United States v. Mosley,*
    454 F.3d 249 (3d Cir. 2006)...................................................... 13

*United States v. Nixon,*
    418 U.S. 683 (1974) ................................................................ 19

*United States v. Olano,*
    507 U.S. 725 (1993) ................................................................ 18

*United States v. Salazar,*
    805 F.3d 1394 (9th Cir. 1986)................................................... 22

*United States v. Sinkler,*
    267 F. App'x 171 (3d Cir. 2008) ............................................... 22

*United States v. Stanfield,*
    109 F.3d 976 (4th Cir. 1997)..................................................... 12

*United States v. Tracey,*
    597 F.3d 140 (3d Cir. 2010)...................................................... 22

*United States v. Trant*,
  924 F.3d 83 (3d Cir. 2019) ........................................................ 23

*Whren v. United States*,
  517 U.S. 806 (1996) ........................................... 12, 14, 15, 17, 18

*Ziaee v. West*,
  916 F.2d 1204 (7th Cir. 1990) ................................................. 21

## Statutes and Rules

18 U.S.C. § 922(g)(1) ................................................................. 4

18 U.S.C. § 3231 ........................................................................ 1

18 U.S.C. § 3731 ........................................................................ 1

N.J. Stat. Ann. 39:4-126 ......................................................... 14

Fed. R. App. P. 4(b)(1)(B)(i) ................................................... 1

## JURISDICTIONAL STATEMENT

This appeal is from an order suppressing evidence in a criminal case. The District Court (Hon. John Michael Vazquez, U.S.D.J.) had subject matter jurisdiction under 18 U.S.C. § 3231. The court entered the suppression order on December 2, 2021, and the United States filed a timely notice of appeal the next day. A1–4[1]; *see* Fed. R. App. P. 4(b)(1)(B)(i). This Court has jurisdiction over this appeal under 18 U.S.C. § 3731. Furthermore, the Solicitor General of the United States has approved this appeal, which the then-Acting United States Attorney certified "is not taken for purpose of delay" and concerns "evidence" that "is a substantial proof of a fact material to the proceeding." 18 U.S.C. § 3731; *see* A2.

## STATEMENT OF THE ISSUE

The District Court suppressed a loaded firearm found in a backseat passenger's jacket during a lawful traffic stop. The court recognized that the arresting officer did not exceed the scope of the stop by opening a car door to speak with the passenger, because the officer could have ordered him out of the car. And the bulge in the passenger's jacket the officer saw after lawfully opening the door justified a protective frisk. But the court concluded the United States waived that winning argument by contending only that reasonable suspicion justified opening the car door—a contention the court rejected. In other words, the court suppressed the sole evidence supporting this prosecution not because the constable blundered, but because the constable's

---

[1] "A" refers to the Appendix accompanying this brief. "DE" refers to an entry on the District Court docket.

constable blundered. So this appeal presents a narrow issue: Is suppression warranted despite no Fourth Amendment violation just because the Government advocates applying the wrong legal standard?

The Government preserved this issue by opposing Defendant Donte Dowdell's suppression motion, agreeing with the court's reasoning for why no Fourth Amendment violation had occurred, and objecting to the finding of waiver. A37–45; *see* A4, 9–10, 60–71, 243–267.

### STATEMENT OF RELATED CASES AND PROCEEDINGS

The Somerset County Prosecutor's Office charged Dowdell with New Jersey firearms offenses following his arrest. A276–287. Once the United States adopted this case for federal prosecution, the state charges were dismissed. A288–289. There are no other related cases or proceedings.

### STATEMENT OF FACTS AND CASE

***The Traffic Stop.*** As part of a response to a surge of gang-related crimes and shootings that had begun several months earlier, on January 8, 2021, at 7:30 p.m., several members of the Somerset County Prosecutor Office's Organized Crime and Narcotics Task Force were patrolling a neighborhood in Franklin Township, New Jersey in unmarked cars. A10–11, 23, 95–98. One of the officers, Detective Nicholas Gambino, earlier that evening had noticed a white BMW sedan parked in front of Lorenzo Hill's house, a gathering place for the Bounty Hunter Bloods. A12, 23, 98–99, 132–133. When Detective Gambino saw the BMW driving near that vicinity, he followed it. He soon saw the BMW make a right turn without using a turn signal. A12–13, 22–23, 138.

Detective Gambino radioed to his supervisor, Sergeant William Brown, who was driving an SUV with two other officers that was equipped with police lights and a siren, to pull the BMW over for a traffic stop. A13, 17, 131–132; *see* A156–158. Sergeant Brown did so, and he, Detective Gambino and the two other officers quickly converged on the car. *See* A17, 65, 158–160. Approaching the left rear door and shining his flashlight inside, Detective Gambino recognized Donte Dowdell in the back left seat and Lorenzo Hill in the front passenger seat. A13, 104–105. Detective Gambino knew both to be Bounty Hunter Bloods from prior investigations and arrests. A15, 28, 104–106; *see* A113–127. He also knew Dowdell's home had been targeted in a drive-by shooting a few days before. A13–14, 28, 96, 105. And the detective knew the driver, Symeerah Hyman, was Hill's girlfriend. A13, 105, 112.

Still conducting "a sweep of the vehicle for safety purposes" and wanting to talk to Dowdell about the drive-by shooting, A13–14, 29, 105–106, Detective Gambino opened the left rear car door, A14, 105, 142. He immediately saw a large, chest-level bulge on the left side of Dowdell's jacket; Dowdell's seat belt made the bulge even more obvious. A14, 105–106. The detective ordered Dowdell out of the sedan and patted the bulge, which felt like a handgun. A14, 108. Dowdell admitted one was in his pocket. A14, 108. Detective Gambino arrested Dowdell and called out to the other officers to remove Hill and Hyman from the car and detain them until the officers could determine that there were no other weapons in the car. A14, 17, 107, 109, 161–162, 168. While the other officers took care of that, Detective Gambino

– 3 –

secured the gun, a semi-automatic with a fully loaded ten-round clip and a bullet in the chamber. A14, 110.

The BMW was registered to Hyman's mother, and there was no dispute that Hyman had authority to drive the car. A188, 201–202. Hyman consented to a search of the car, which turned up no additional weapons or contraband. A110–113, 163, 205. And the officers found no weapons or contraband on her and Hill. A63, 205. Accordingly, the officers allowed Hyman and Hill to leave in the BMW. A17–18, 111, 163, 205–206. Later that night, they issued Hyman a traffic summons for not using her turn signal. A18, 111–112, 163–164, 170. Meanwhile, the officers took Dowdell to the task force's headquarters in Somerville, New Jersey, and obtained approval to charge him with New Jersey firearms offenses. A163, 276–287.

*The Suppression Motion.* Given Dowdell's criminal history and gang ties, the U.S. Attorney's Office adopted the case for federal prosecution and obtained an indictment charging him with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). DE11. Dowdell moved to suppress the gun and ammunition, contesting the validity of the traffic stop (the seizure) and the pat down (the search) and submitting an affidavit calling false material aspects of Detective Gambino's arrest report. A47–59. Among other things, Dowdell alleged the detective was lying about seeing a bulge in Dowdell's jacket before frisking him. A51, 58.

The Government opposed the motion, A60–71; Dowdell submitted a reply, A72–77; and the District Court ordered an evidentiary hearing. At the

hearing, Detective Gambino and Sergeant Brown testified about what prompted the stop and what followed. A90–172. Dowdell for his part called Hyman, who denied that she had committed any traffic violations that evening. A174–211. At the conclusion of the hearing, the court directed the parties to file post-hearing briefing. A226–228.

In that post-hearing briefing, Dowdell's arguments shifted. As he had in his prior briefing, Dowdell insisted that Detective Gambino had lied about the basis for the stop, which Dowdell now contended was the result of "illegal profiling." A232–236. But he added two new claims: (1) opening the car door was a search in violation of the Fourth Amendment as an unjustified "warrantless physical intrusion" under *Florida v. Jardines*, 569 U.S. 1 (2013), only after which did Detective Gambino see in plain view the bulge in Dowdell's jacket, A236–240; and (2) seeing that bulge wasn't enough to justify a frisk in any event, A240–242.

The Government's responsive brief explained why the court should credit Detective Gambino's testimony about the traffic violation he had seen and reject Hyman's contrary testimony. A248–256, 264–266. But that brief didn't directly address the newly asserted *Jardines* claim. Instead, the Government argued the traffic stop was also justified by a reasonable and articulable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968), that someone in the BMW was engaging in criminal activity. A256–259. The Government then argued Detective Gambino's opening the car door in order to speak with Dowdell was reasonable under the totality of the circumstances. A259–260.

Once Detective Gambino saw the bulge, the Government maintained he had sufficient reason to believe Dowdell was armed and dangerous to justify the ensuing pat down. A260–261.

The Government's brief made two other points, however, indirectly suggesting that opening the car door was a proper part of the traffic stop. The Government argued that, because it took "'just a couple of minutes' from the beginning of the stop to [the] recovery of the gun" from Dowdell, everything the officers did until then "was lawful and on-mission" and therefore didn't unconstitutionally prolong the traffic stop. A261–263. And the Government asserted that once Detective Gambino saw Dowdell and Hill inside the BMW, the detective "had reasonable concern for his safety based, at least in part, on their association with a gang involved in active violent feuds, his observations of the BMW during surveillance, and his training and experience." A264.[2]

Although the court's oral scheduling order had not contemplated a reply brief, A228, Dowdell filed one anyway, A268–275. In it, Dowdell argued the Government had waived any objection to his argument that the detective had "violated the Fourth Amendment by opening Mr. Dowdell's door without consent or suspicion, but simply 'to speak to' him." A273. According to Dowdell, by citing off-point cases to argue that opening the rear door to speak

---

[2] That parallels New Jersey's standard for opening a car door during a traffic stop, which requires more than the stop itself but less than a *Terry* frisk. *See State v. Mai*, 993 A.2d 1216, 1217–18, 1221–22, 1224 (N.J. 2010). The "facts in the totality of the circumstances" must justify "the objectively reasonable belief that, as a precautionary measure, the door to the vehicle needed to be opened by the police." *Id.* at 1224 (cleaned up).

with him was proper, the Government had "simply ignore[d]" his *Jardines* claim, thereby waiving "any objection to it." A273.

***The Suppression Decision.*** A month later, the court ruled orally on the suppression motion. The court first sought confirmation "that the Governments' position" regarding the propriety of "opening of the car door" during the traffic stop relied only "on an argument pursuant to the *Terry* standard that Detective Gambino had a reasonable articulable suspicion in light of the totality of the circumstances." A10. The Government answered, "That's absolutely correct, Your Honor, yes." A10.

The court then announced its ruling. Crediting the testifying officers, the court found Hyman had "failed to use her turn single when making a right" turn "and therefore the stop was lawful." A22–23. The court also found Hyman's testimony incredible for several reasons. A23–27. And the court concluded that, once Detective Gambino opened the car door and saw in plain view the bulge in Dowdell's jacket, the detective could conduct a *Terry* pat down in light of all the detective knew before then about the location, the surge in gang-related violence in the area, Dowdell's gang ties and Dowdell's home having been the target of a very recent drive-by shooting. A36–37.

But the court also concluded it still should grant the suppression motion in light of "the positions of the parties" on "the legality of opening the back door" of the BMW. A27; *see* A32, 35–36. Insofar as the Government had justified the opening of the rear door on the grounds that Detective Gambino had a reasonable suspicion under *Terry* that criminal activity was afoot and

Dowdell was armed and dangerous even before the detective saw the bulge, the court found that argument wanting. A27–32, 37; *see* A38. In the court's view, until Detective Gambino saw the bulge in Dowdell's jacket, the detective lacked a sufficient basis under *Terry* to either frisk Dowdell or search the BMW's interior. A27–32, 35–37.

Having rejected what it deemed the Government's sole argument for opening the car door, the court explained why opening that door was proper under the Fourth Amendment "under an alternative analysis that was available" to the Government but "was not raised." A32. The Government had cited *Maryland v. Wilson*, 519 U.S. 408 (1997), and *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (per curiam), for the proposition that traffic stops pose substantial risks to the police. A62–63, 257; *see* A38. Under those cases and others, the court explained, Detective Gambino could have ordered everyone out of the car—driver and passengers alike—without any justification beyond the traffic stop itself, and that if in exiting a car, a suspicious bulge became obvious, the detective could have patted down that bulge. A32–35.

The court found no material difference for Fourth Amendment purposes between ordering an occupant out of a lawfully stopped car and opening one of that car's doors from the outside. As the court put it, "if the officer can order you out of the car, the officer can also open the door to the car." A35. Consequently, had the Government made that argument, the court would have denied the suppression motion. A32, 35–36. But the court felt constrained to grant the suppression motion because it wouldn't "be fair to rule on an issue

based on an argument not raised by the Government." A32; *see* A40 ("But Mr. Sharma didn't get the benefit of that argument so I could hear him reply.").

During a colloquy with the Government, the court explained that although the Government had cited the correct legal precedent (*Wilson*), the Government did not cite the dispositive legal principles from that precedent, which the court identified "through independent research." A37–39. The court was "miffed" that it had to "do the research to find" the "answer." A40. The court made "clear" that the Government "had a legitimate basis to win this case" and the court would have denied suppression had the Government raised the correct argument. A40. But the Government hadn't, in the court's view, so it was "waived." A40; *see* A40–43. The court said it was "not happy about this decision" but felt "constrained" to rule against the Government "under the facts." A43.

The court entered its order granting the motion later that day. A4. The Government filed its notice of appeal the next day. A1–3. The following week, the Government consented to Dowdell's release on bail with a condition of home confinement and electronic monitoring. DE51.

## Summary of Argument

Sound policework caught the defendant with a loaded handgun during a lawful traffic stop. Because of his prior felony convictions and ties to a violent gang, the defendant soon faced federal prosecution for unlawfully possessing that loaded gun. He moved to suppress the loaded gun, contending the police had no legitimate reason to stop the car in which he was a back seat passenger, open the rear door, and frisk him. The District Court disagreed, finding nothing the police did that night violated the defendant's Fourth Amendment rights. That was correct.

Nevertheless, the District Court granted the suppression motion because the Government supposedly "waived" the winning argument by advocating the wrong, more defendant-friendly standard. In the court's view, the Government had defended the opening of the car door solely on the grounds that the officer who opened the door reasonably suspected the defendant was both engaging in criminal activity and armed and dangerous. Finding the officer lacked reasonable suspicion until he saw a bulge in the defendant's jacket *after* opening the door, the court suppressed the gun. But using the caselaw and safety rationale discussed in the Government's briefs, the court also explained that had the Government argued the traffic stop by itself justified opening the door, the court would have denied the motion.

That's not how waiver works. A party doesn't waive application of the correct legal standard merely by mistakenly advocating a legal standard more onerous to that party. And that's especially true when, as here, that party

agrees with the court that, under the correct legal standard, the party should prevail. On top of that, the sole basis the District Court offered for granting suppression cannot be squared with the *raison d'être* for the exclusionary rule: to deter police misconduct. Because there was no Fourth Amendment violation here, for the very reasons the District Court identified, this Court should reverse and remand for further proceedings.

ARGUMENT

## I.    There Was No Fourth Amendment Violation Here, for the Very Reason the District Court Identified.

***Standard of review*:** This Court reviews *de novo* whether a traffic stop violated the Fourth Amendment, but reviews "findings of historical fact only for clear error" and gives "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *see United States v. Harrison*, 689 F.3d 301, 306 (3d Cir. 2012) ("We review factual determinations made on a motion to suppress for clear error and legal determinations de novo.").

There would be no point in this appeal had there been a Fourth Amendment violation. There was none. Drawing on cases the Government had cited and its own research, the District Court concluded the Fourth Amendment permits a police officer to open a car door as part of a lawful traffic stop. The court further concluded the officer does not need a reasonable suspicion that someone inside the car is dangerous and has access to a weapon before opening the door, because the stop itself provides the only justification needed. Those conclusions were correct.

Under the Fourth Amendment, a police officer can stop a car if he sees the driver commit a traffic offense, even if the stop is just an excuse to investigate something else. *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 810 (1996). During the stop, the officer "may exercise reasonable superintendence over the car and its passengers." *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004). That includes ordering the occupants out of the car, driver and passengers alike. *See, e.g.*, *Wilson*, 519 U.S. at 410, 414–15 (passengers); *Mimms*, 434 U.S. at 109–11 (driver). And if the officer has some articulable, reasonable suspicion that the occupants may be dangerous, he can pat them down and search the car's interior—including closed compartments—for weapons they could quickly grab. *See Arizona v. Johnson*, 555 U.S. 323, 327, 330–34 (2009); *Michigan v. Long*, 463 U.S. 1032, 1037, 1049–50 (1983).

But as the District Court explained, under *Mimms* and *Wilson*, an officer may open a car door during a lawful traffic stop without needing the justification required to search the passenger compartment of the car or frisk anyone inside. The "actual invasion of privacy entailed in an officer's opening of the vehicle door is indistinguishable from, if not precisely the same as, that which occurs when an occupant is required to open a door to exit a vehicle pursuant to an order given under the authority of *Mimms* or *Wilson*." *United States v. Stanfield*, 109 F.3d 976, 983 (4th Cir. 1997); *see United States v. Brown*, 334 F.3d 1161, 1169 (D.C. Cir. 2004) (Garland, J.) (explaining that an officer "undertook" a "search of the most minimal kind: he merely cracked open the car door and looked inside without breaking the plane of the car's surface");

*People v. David L.*, 436 N.E.2d 1324 (N.Y. 1982) (reversing on the grounds articulated in the dissent below that opening a door is a minimally intrusive safety precaution incident to a valid traffic stop).

That's especially so because of a passenger's marginal privacy interest in the car in which he is riding. "Fourth Amendment rights are personal rights, and a search of a car does not implicate the rights of non-owner passengers: the car is treated conceptually like a large piece of clothing worn by the driver." *United States v. Mosley*, 454 F.3d 249, 253 (3d Cir. 2006). Thus, "a passenger in a car that he neither owns nor leases typically has no standing to challenge a search of the car." *United States v. Baker*, 221 F.3d 438, 441–42 (3d Cir. 2000). True, the Supreme Court hasn't held "that passengers cannot have an expectation of privacy in automobiles" or that "a passenger lawfully in an automobile may not … challenge a search of that vehicle unless he happens to own or have a possessory interest in it." *Byrd v. United States*, 138 S. Ct. 1518, 1528 (2018) (cleaned up). But the Supreme Court has held that "legitimate presence alone" is *not* "sufficient to assert a Fourth Amendment interest" in "the areas of the car which were searched." *Id.* (cleaned up).

As the District Court concluded, A35, "no meaningful or relevant difference exists between the grant of authority to order an occupant of a vehicle to exit the vehicle and the authority to open the door as part of issuing that lawful order." *State v. Mai*, 993 A.2d 1216, 1222 (N.J. 2010). "Plain logic demands that the principles that govern whether a passenger of a vehicle lawfully can be ordered out of the vehicle must apply with equal force to

whether a police officer is entitled, as a corollary and reasonable safety measure, to open the door as part of issuing a proper order to exit." *Id.* It would be quite strange to think the Fourth Amendment categorically allows the police to order a passenger out of the car during a traffic stop, as *Wilson* holds—but only if the passenger opens the car door from the inside, and not if the police open the door from the outside.

Thus, as the District Court concluded, there was no Fourth Amendment violation here. The court credited Detective Gambino's testimony that Hyman had failed to use her turn signal while making a right turn, while finding Hyman's contrary testimony incredible. A22–27. That credibility determination cannot be clearly erroneous. *See, e.g.*, *Anderson v. City of Bessemer*, 470 U.S. 564, 574–75 (1985). And that turn signal violation by itself justified the traffic stop. *See Whren*, 517 U.S. at 810; N.J. Stat. Ann. 39:4-126 ("Signaling before starting, turning or stopping").

Furthermore, when Detective Gambino opened the car door, which itself was objectively reasonable in light of all he then knew, his fellow officers were still trying to "address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (cleaned up). As part of that mission, Detective Gambino could order everyone out of the BMW. *Johnson*, 555 U.S. at 331–32. And that meant he could open the car door—even to discuss a recent shooting—without any need for an additional showing of reasonable suspicion, because he did not enter the car. *See United States v. Hurtt*, 31 F.4th 152, 163 & n.85 (3d Cir. 2022). The

"Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren*, 517 U.S. at 814; *see Ohio v. Robinette*, 519 U.S. 33, 38 (1996) ("Deputy Newsome was objectively justified in asking Robinette to get out of the car, subjective thoughts notwithstanding.").

Finally, once Detective Gambino saw in plain view the large bulge in Dowdell's jacket, the detective had ample justification to pat him down. As the District Court noted, *Mimms* foreclosed any contrary argument. A36. There, the Supreme Court held that the "bulge in the jacket" the officer saw upon ordering Mimms out of the car "permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer." *Mimms*, 434 U.S. at 112. "In these circumstances, any man of 'reasonable caution' would likely have conducted the 'pat down.'" *Id.* But Detective Gambino also knew that: (1) Dowdell and Hill were Bounty Hunter Bloods; (2) their gang was engaged in violent disputes with another gang; (3) Dowdell's home had been the target of a very recent shooting; and (4) the stop took place in a general area of increased violent crime and on a street with increased narcotics complaints and firearms arrests. A36; *see* A11–14, 23, 28.[3]

---

[3] Had this remained a state case, those additional facts would have justified opening the car door even under New Jersey's heightened standard. *See Mai*, 993 A.2d at 1223–24.

## II.    The District Court Erred by Granting the Suppression Motion on Waiver Grounds Despite Finding No Fourth Amendment Violation.

**Standard of Review:** Ordinarily, this Court reviews "a district court's grant of" a "motion to suppress for clear error as to the underlying facts" and exercises "plenary review as to its legality in light of the court's properly found facts." *United States v. Crandell*, 554 F.3d 79, 83 (3d Cir. 2009) (cleaned up). But this Court reviews "for abuse of discretion" a "district court's determination" that "a party waived an argument by failing to raise it earlier in the proceedings." *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 219 n.9 (3d Cir. 2021).

The District Court's correct conclusion that Detective Gambino did not violate Dowdell's Fourth Amendment rights should have resulted in the denial of the suppression motion. Suppression is a remedy of last resort for Fourth Amendment violations. *United States v. Katzin*, 769 F.3d 163, 170–71 (3d Cir. 2014) (en banc). Here, there was no Fourth Amendment violation at all and thus no basis for suppression. Beyond that, the Supreme Court has "said time and again that the *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement." *Davis v. United States*, 564 U.S. 229, 246 (2011). And the Court has "repeatedly rejected efforts to expand the focus of the exclusionary rule beyond deterrence of culpable police misconduct." *Id.* Here, there was no police misconduct to deter.

Yet the District Court still granted Dowdell's suppression motion and excluded the only evidence supporting his prosecution. Why? As a sanction for inadequate briefing. In the court's view, the Government had "waived" the winning argument by not pressing it in its post-hearing response to Dowdell's newly raised *Jardines* claim but instead advocating application of the wrong

legal standard. A37–44. That was not a waiver under this Court's precedent, and even if it was, the District Court abused its discretion in not excusing it. *See, e.g.*, *Barna v. Board of Sch. Dirs. of Panther Valley School Dist.*, 877 F.3d 136, 146–50 (3d Cir. 2017) (distinguishing between waiver and forfeiture, finding only forfeiture, and excusing it).

### A.  There Was No Waiver or Forfeiture, Just at Most a Mistaken Legal Concession That Could Not Bind the District Court.

The Government, of course, is held to the same issue preservation, forfeiture and waiver standards that apply to all litigants. *See, e.g.*, *United States v. Abreu*, 32 F.4th 271, 274–76 (3d Cir. 2022); *United States v. Bradley*, 959 F.3d 551, 553, 556–57 (3d Cir. 2020). And here, the Government certainly could have done a better job of assisting the District Court in deciding the suppression motion. Once Dowdell filed his post-hearing brief, his suppression claim boiled down to just three issues: (1) did Detective Gambino see a motor vehicle violation; (2) what justification did he need to open the car door; and (3) did he have reason to believe Dowdell was armed and dangerous upon seeing the bulge in Dowdell's jacket?

Rather than focus on controlling precedent bearing on those issues in the traffic stop context, such as *Mimms*, *Long*, *Whren*, *Wilson* and *Johnson*, however, much of the Government's post-hearing brief treated the traffic stop as the kind of encounter that occurred in *Terry* itself. A249, 256–261, 264. Consequently, the brief detoured into whether Detective Gambino had a reasonable suspicion that Dowdell *himself* was engaged in criminal activity and armed and

dangerous when the detective saw Dowdell in the BMW after stopping it. A256–263. The Government never should have assumed that burden. Because the stop itself was lawful given the traffic infraction, *see Whren*, 517 U.S. at 810; *Mimms*, 434 U.S. at 109, opening the car door was justified under *Wilson* without needing any additional showing of reasonable suspicion.

Indeed, the Government's post-hearing brief alluded to that very point, insofar as it argued that everything the officers did until seeing the bulge in Dowdell's jacket—which necessarily included opening the car door—was "lawful and on-mission" under *Rodriguez*. A263. Moreover, that brief invoked the officer safety issues inherent in any traffic stop—the very basis for the rule in *Wilson*—and the reasonable concern Detective Gambino had for his own safety upon seeing Dowdell and Hill in the car, given everything he knew about them as Bounty Hunter Bloods. A257, 264. So the Government never should have answered the District Court that it was justifying the opening of the car door under *Terry*, A10, without clarifying that officer safety concerns justified opening the door, too.

But that doesn't mean the Government waived, or even forfeited, the *Wilson*-based argument the District Court said would have prevailed. Waiver requires "the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (cleaned up). On the other hand, forfeiture "is the failure to make the timely assertion of a right." *Id.* (cleaned up). Here, the Government did neither. Far from informing the court it was not raising a *Wilson* argument, the Government said it was making that

very argument, too. A39–43. At most, through its briefing and an improvident answer to the court's *Terry* question, the Government made a mistaken legal concession by advocating the wrong (and unduly strict) standard: that opening the car door required something more than the valid traffic stop itself.

That shouldn't count as a "waiver" (or even a "forfeiture"). A court should always apply the correct law regardless of what the parties say. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). And as this Court has recognized, a court "is not bound by the government's [legal] concession" and retains an "obligation" to apply legal principles the court identifies as correct. *United States v. Engler*, 806 F.2d 425, 433 (3d Cir. 1986).

Thus, "a court cannot properly determine a question of law on the basis of a party's concession, even a concession by the government." *United States v. Castillo*, 896 F.3d 141, 149 (2d Cir. 2018) (cleaned up). It is, after all, "emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803); *accord United States v. Nixon*, 418 U.S. 683, 703 (1974). That duty applies regardless of whom it might benefit in a particular case. For example, if defense counsel had "conceded at argument that the police had probable cause to arrest" the defendant before he incriminated himself, that concession "would not have

relieved the court of its responsibility of decision on the point." *Gockley v. Myers*, 450 F.2d 232, 237 n.2 (3d Cir. 1971).

So the Government did not "waive" the *Wilson*-based argument in any meaningful sense of the word, and the District Court abused its discretion in concluding otherwise. *See Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."). Having become aware of the correct legal standard, even if as a result of its own research, the court had a duty to apply the correct legal standard to the facts here. *Cf. United States v. Davis*, 183 F.3d 231, 252 (3d Cir. 1999) (explaining that a district judge's "immanent obligation to research the law and craft an appropriate charge" cannot "be avoided by requiring the lawyers to file legal memoranda on a pedestrian issue and then considering them not to have preserved the issue if they do not"). And that means the court should have denied the suppression motion.

## B. Given the Interests at Stake, the District Court Should Have Excused Any Failure to Advocate the Correct Legal Standard.

Even if the Government did "waive"—by failing to timely raise—the *Wilson*-based argument, the District Court should have excused that waiver and denied Dowdell's suppression motion. Once again, "the *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement." *Davis*, 564 U.S. at 246. Accordingly, that harsh remedy is not meant "to punish the errors of judges and magistrates" who mistakenly issue warrants, *United States v. Leon*, 468 U.S. 897, 916 (1984), or "mistakes by court employees" in their clerical

duties, *Arizona v. Evans*, 514 U.S. 1, 14 (1995). Nor is suppression meant to punish good faith but mistaken understandings of the law. *Heien v. North Carolina*, 574 U.S. 54, 64–65 (2014).

Applying a strict waiver rule here, thereby resulting in suppression of the very evidence supporting this prosecution, would punish the Government's lawyers—and society at large—for inadequate briefing. It would not deter law enforcement from "future Fourth Amendment violations." *Davis*, 564 U.S. at 236–37. The "acknowledged absence of police culpability doom[ed]" the suppression claim in *Davis. Id.* at 240. So the acknowledged absence of police culpability under the correct legal framework in this case should have doomed Dowdell's suppression claim, too.

As in other contexts, "without a wrong, there is no justification for a remedy." *Ziaee v. West*, 916 F.2d 1204, 1208 (7th Cir. 1990) (Easterbrook, J.). "And since the focus of the exclusionary rule is solely on deterring police misconduct, there is little sense in excluding evidence based on Government counsel's mistakes." *United States v. Campbell*, 26 F.4th 860, 878 (11th Cir. 2022) (en banc). That is especially so here, where "the bottom-line effect" of the exclusionary rule" would be "to suppress the truth and set the criminal loose in the community without punishment." *Davis*, 564 U.S. at 237.

Although the District Court said it was "constrained" to grant suppression in light of the parties' framing of the issues, A43; *see* A32, 40, that was doubly mistaken. *See Koon*, 518 U.S. at 100 ("The abuse-of-discretion standard includes review to determine that the discretion was not guided by

erroneous legal conclusions."). The court could have denied the "suppression motion on a ground it raised *sua sponte* as long as it" didn't deprive Dowdell of "the 'opportunity to adduce evidence in his favor.'" *United States v. Sinkler*, 267 F. App'x 171, 174 (3d Cir. 2008) (non-precedential) (quoting *United States v. Salazar*, 805 F.3d 1394, 1400 (9th Cir. 1986)). Alternatively, reserving decision on the motion while giving both parties the chance to brief the argument the court had identified would have prevented any possible prejudice to Dowdell. But given the controlling precedent discussed above, it's hard to see what he could have said in additional briefing to refute that argument.[4]

What the District Court could not do, however, was what it did here. It would be one thing if the court had declined to explore an argument against suppression given the Government's failure to advance it. *See United States v. Tracey*, 597 F.3d 140, 149–50 (3d Cir. 2010). Here, though, after posing a question to the prosecutor, the court concluded the Government's stated justification for opening the car door failed, then explained why there was no Fourth Amendment violation at all, but still suppressed the evidence. "A trial should be a solemn exercise in a search for truth, not a game of 'gotcha.'"

---

[4] Indeed, Dowdell's post-hearing brief twice cited *McHam v. State*, 746 S.E.2d 41 (S.C. 2013). *See* A238, 240. There, South Carolina's Supreme Court held "as a general principle that officer safety can justify the opening of a door to an occupied vehicle under reasonable circumstances." *McHam*, 746 S.E.2d at 50. Although the District Court didn't address *McHam*, the court alluded to New Jersey Supreme Court precedent on the same issue in explaining why the Fourth Amendment required nothing beyond a valid traffic stop itself. A42.

*United States v. Trant*, 924 F.3d 83, 91 (3d Cir. 2019). The same should be true here, where suppression would require dismissal of an entire case.

## CONCLUSION

For all these reasons, this Court should reverse the order granting the suppression motion and remand for further proceedings.

Respectfully submitted,

PHILIP R. SELLINGER
UNITED STATES ATTORNEY

By:   Mark E. Coyne
      Assistant U.S. Attorney
      Chief, Appeals Division
      970 Broad Street, Suite 700
      Newark, New Jersey 07102
      (973) 297-2002

Date: May 20, 2022

## CERTIFICATE OF COMPLIANCE

I certify as an Assistant United States Attorney for the District of New Jersey that:

1.    This corrected brief complies with the length limitations of Fed. R. App. P. 32(a)(7) by not exceeding 30 pages.

2.    This corrected brief complies with the typeface requirements and type style requirements of Fed. R. App. 32(a)(5) and (6) by using Microsoft Word 2016's 14-point proportionally-spaced Calisto MT typeface.

3.    The text of the PDF and paper copies of this corrected brief will be identical.

4.    The PDF copy of this corrected brief was prepared on a computer automatically protected by a continuously updated version of McAfee Endpoint Security 10.7, and no virus was detected.

Mark E. Coyne
Assistant U.S. Attorney
Chief, Appeals Division

Dated: May 20, 2022

## CERTIFICATION OF FILING AND SERVICE

I certify that on May 20, 2022, I caused this corrected brief to be filed with the Clerk of this Court using the Court's electronic filing system. Seven hard copies of this corrected brief will be delivered by mail next week.

I also certify that on May 20, 2022, I caused this corrected brief to be served by notice of electronic filing generated by this Court's electronic filing system upon:

> AFPD Rahul K. Sharma
> Rahul.Sharma@fd.org
> Counsel for Appellee

Mark E. Coyne
Assistant U.S. Attorney
Chief, Appeals Division

Dated: May 20, 2022